# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

CHERRIA M. RUNNELS-KARSIOTIS,

　　　　　Defendant-Appellant.

UNPUBLISHED
December 22, 2016

No.　328377
Oakland Circuit Court
LC No.　2014-251477-FH

Before:　SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of fourth-degree criminal sexual conduct (CSC-IV) (use of force or coercion to accomplish sexual contact), MCL 750.520e(1)(b). She was acquitted of third-degree criminal sexual conduct (CSC-III) (use of force or coercion to accomplish sexual penetration), MCL 750.520d(1)(b). The trial court sentenced defendant to time served and two years' probation. Defendant was one of several rotating caretakers employed by an in-home health care provider that the victim, who speaks little English, retained to assist with her severely disabled son. Through an interpreter, the victim testified that defendant returned to her apartment in the middle of the night, several hours after defendant's shift ended, claiming to have left paperwork there, and after being admitted by the victim, forced the victim into her bathroom and sexually assaulted her. Defendant alleges that she was denied a fair trial because of prosecutorial misconduct and ineffective assistance of counsel, that the evidence was insufficient to support her conviction, and that her conviction was against the great weight of the evidence. We affirm.

Although defendant did raise the issue of prosecutorial misconduct in a post-trial motion, defendant did not "contemporaneously object and request a curative instruction" in response to any of her claimed instances of prosecutorial misconduct, so that issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Consequently, our review is for "plain error affecting substantial rights," meaning a readily apparent error likely affected the outcome of the proceedings below and "resulted in the conviction of an actually innocent defendant" or seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014); *People v Kowalski*, 489 Mich 488, 506; 803 NW2d 200 (2011); *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015) (internal quotations omitted). In the absence of factual findings by the trial court, which would be reviewed for clear error, we review claims of

prosecutorial misconduct de novo as a constitutional issue. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 279 Mich App at 134. The defendant bears the burden of establishing that such an error occurred, which resulted in a miscarriage of justice. *Id*. "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475. More specifically, we evaluate a prosecutor's comments "in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). A prosecutor is generally given "great latitude regarding his or her arguments and conduct at trial," *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and is not required to confine his or her argument "to the blandest possible terms," *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Moreover, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 22. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defendant argues that the prosecutor improperly denigrated her by describing her repeatedly as a "predator" and improperly appealed to the jury's sympathy by describing the victim as a "vulnerable victim" or "prey." The wide latitude afforded prosecutors does not extend to "denigrating a defendant with intemperate and prejudicial remarks." *People v Steanhouse*, 313 Mich App 1, 33; 880 NW2d 297 (2015) (internal quotation omitted). Likewise, "[a]ppeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). However, a prosecutor may "argue the facts and reasonable inferences arising therefrom," *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011), so long as the prosecutor does "not argue facts not in evidence or mischaracterize the evidence presented." *Watson*, 245 Mich App at 588. Moreover, the "[o]pening statement is the appropriate time to state the facts that will be proved at trial." *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010).

We find no misconduct under the circumstances of this matter. The prosecutor's descriptions reflect the prosecutor's theory of the case and are colorful but essentially accurate descriptions of the evidence presented at trial. The evidence was that the victim was originally from Iraq, moved to the United States when her husband died, spoke very little English, lived alone with her severely incapacitated son, did not have a functioning telephone or car, and weighed approximately 118 pounds. The evidence further showed that defendant was well aware of at least some of those salient facts and had in fact verified that the victim lacked a functioning telephone, and Madison Heights Detective Shawn Scofield testified that defendant is "considerably larger" than the victim. Any difference in physical size between defendant and the victim would have been readily apparent to the jury despite defendant's decision not to testify. The evidence reasonably supported an inference that the victim was vulnerable and defendant exploited the victim's weaknesses.

Accordingly, the prosecutor's use of arguably colorful rhetoric does not render her comments improper, and thus, defendant cannot demonstrate an error occurred. See *Meissner*,

294 Mich App at 456; *Kowalski*, 489 Mich at 506. Even if the prosecutor's comments were improper, reversal is not warranted because the trial court instructed the jurors to consider only the evidence presented without allowing sympathy or prejudice to influence their decision. Furthermore, the trial court specifically instructed the jurors that the lawyers' statements and arguments are not considered evidence. This instruction was sufficient to cure any potential prejudicial effect, and defendant fails to rebut the presumption that the jury followed the court's instruction. See *Abraham*, 256 Mich App at 279. Thus, defendant cannot demonstrate that the alleged error affected the outcome of the lower court proceedings. See *Kowalski*, 489 Mich at 506.

Next, defendant argues the prosecutor improperly vouched for the credibility of the victim by eliciting testimony from Scofield to explain inconsistencies in the victim's testimony, stating during closing argument that "she told you the complete version of what we're saying or what we're alleging has happened," and attempting to explain the victim's difficulty in telling others what happened. "[A] prosecutor may not vouch for the credibility of a witness or suggest that he or she has some special knowledge that the witness is testifying truthfully." *People v Roscoe*, 303 Mich App 633, 649; 846 NW2d 402 (2014). However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Here, defense counsel extensively cross-examined Scofield regarding weaknesses in the case, opening the door for the prosecutor to properly attempt to rehabilitate the witness by eliciting testimony regarding the tendency for information to develop over time during an investigation. There is nothing improper about that line of questioning nor was it improper for the prosecutor to offer argument based on Scofield's answers. See *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). Furthermore, urging the jury to believe the victim's version of events rather than a defendant's version of events is not improper where, as here, the argument was based on facts presented at trial. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005).

Finally, defendant argues that the prosecutor improperly shifted the burden of proof during her rebuttal closing argument. A prosecutor generally may not comment on a defendant's decision not to testify and may not imply that the defendant is obligated to prove anything. *Fyda*, 288 Mich App at 463–464; *Abraham*, 265 Mich App at 273. However, the propriety of a prosecutor's remarks depends on the context of the defendant's arguments, *Seals*, 285 Mich App at 22, and a remark that might otherwise be improper may be proper in response thereto. *Watson*, 245 Mich App at 593. During closing argument, defense counsel expressly told the jury "You may say to yourself, well, I'll give [the victim] the benefit of that doubt. I would beg to differ with you. If you're starting with the presumption of innocence, you owe [defendant] the benefit of the doubt." The prosecutor, during rebuttal, simply told the jury that the victim did not need the benefit of the doubt because the victim had described what had occurred to her. In context, the prosecutor's remark was not improper. In any event, as noted, the jury was instructed that defendant was presumed innocent, that defendant not testifying could not be used against him and the lawyers' remarks were not evidence. Defendant has failed to show any actual errors, whether viewed individually or cumulatively, denied her a fair trial. See *Brown*, 279 Mich App at 146.

Defendant next contends that she received ineffective assistance of counsel when defense counsel failed to object to prosecutorial misconduct, to investigate other possible defenses, and to call potential witnesses. To prevail on an ineffective assistance of counsel claim, defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation and quotation marks omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). Additionally, defendant's burden includes the burden of persuasion in establishing a factual predicate for his claim. *Putman*, 309 Mich App at 248. We find that defendant has not established that he received ineffective assistance of counsel.

Initially, we find that no prosecutorial misconduct occurred; therefore, defense counsel could not have been ineffective for failing to object. See *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). Less easily disposed of is defendant's contention that counsel should have investigated a "Linda," who is allegedly another caretaker for the victim's son, and a "Dr Singer," who allegedly treated defendant for a wrist injury and had restricted defendant from lifting anything over 25 pounds. Defendant also asserts that an expert in post-traumatic stress disorder (PTSD) could have supported the defense theory that the victim fabricated her allegations. However, the affidavit executed by appellate counsel, particularly in light of appellate counsel's admission of uncertainty whether trial counsel actually did consult with or attempt to secure an expert for trial, renders the affidavit not based on personal knowledge but rather hearsay, in violation of MCR 2.119(B)(1)(a), and the affiant cannot testify competently, in violation of MCR 2.119(B)(1)(c).

In any event, "the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted). A substantial defense is one that could have made a difference to the trial's outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Defense counsel cross-examined the victim's "supports coordinator" regarding whether she remembered telling anyone that the victim suffers from PTSD, to which she responded that she was not a medical doctor or a psychologist so she would not know if the victim suffered from PTSD, but that she could have said something to Scofield about PTSD. Additionally the victim's demonstration of how she was moved into the bathroom by the defendant rendered any testimony regarding a wrist injury and weight limitations largely irrelevant. Furthermore, defense counsel successfully made the jury well aware of inconsistencies in the victim's reporting of the incident and won an acquittal on the greater charge. In view of the evidence that was admitted, including bruising on the victim's arms, and in view of the deficiencies in defendant's attempted offer of proof, we are unable to conclude that defense counsel rendered deficient performance and that the proceedings would have had a different outcome but for that error. *Vaughn*, 491 Mich at 669. Accordingly, defendant's claim does not warrant a remand for a *Ginther*[1] hearing, and there are no errors apparent on the record

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

to justify defendant's claim of ineffective assistance of counsel. See *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013).

Defendant next contends that the jury's verdict was against the great weight of the evidence because the victim's testimony was so seriously impeached that it brought out several discrepancies that raise the concern of whether an actually innocent person was convicted. We disagree. Generally, questions of witness credibility are for the fact-finder and are not sufficient grounds for relief *unless* the "testimony contradicts indisputable facts or laws"; the "testimony is patently incredible or defies physical realities"; the "testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror"; or the "testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (citations and internal quotation marks omitted). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647.

Nothing about the victim's testimony rises to the level of intrinsic implausibility, hopeless internal contradiction, or impeachment that would warrant overturning the jury's verdict. The important details of the victim's statements, including defendant as her attacker and the manner in which defendant did so, did not vary. That she did not mention the alleged digital penetration initially is insufficient to undermine her testimony, and there was evidence that it is not uncommon in sexual assault cases for more information to develop over time. The victim's testimony need not be corroborated. MCL 750.520h. Discussed in more detail below, the victim's testimony, standing alone, established that defendant engaged in sexual contact with the victim through the use of force or coercion. We will not interfere with the jury's credibility determination. *Eisen*, 296 Mich App at 331. Even if we reviewed issues of witness credibility on appeal, the jury's conclusion was reasonable in light of the aforementioned facts. Accordingly, the evidence did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand, and thus, defendant is not entitled to a new trial. See *People v Cameron*, 291 Mich App 599, 616-617; 806 NW2d 371 (2011).

Defendant lastly contends that insufficient evidence existed for the jury to convict defendant of CSC-IV. We disagree. A conviction of CSC-IV under MCL 750.520e(1)(b) requires proof "that sexual contact was accomplished by an aggravating circumstance, including, but not limited to, force or coercion by concealment or surprise." *People v Crippen*, 242 Mich App 278, 285; 617 NW2d 760 (2000). We review the evidence, including circumstantial evidence and reasonable inferences, in favor of the prosecution to determine whether the elements of the crime could reasonably be found proven beyond a reasonable doubt. *Gaines*, 306 Mich App at 296; *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). Furthermore, we "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Eisen*, 296 Mich App at 331 (quotation omitted).

"Force or coercion" may include a situation where "the actor overcomes the victim through actual application of physical force or physical violence," or "the actor achieves the sexual contact through concealment or by the element of surprise." See MCL 750.520e(b)(*i*) and (*v*). "Sexual contact" is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the

purpose of sexual arousal or gratification, [or] done for a sexual purpose . . . " MCL 750.520a(q). Touching need not be accomplished with any specific body part of the actor. A person's "intimate parts" include the primary genital area, groin, inner thigh, buttock, or breast. MCL 750.520a(q). "Force" need not only be a physical interaction per se, but rather, force may include "the use of force against a victim to either induce the victim to submit to [a]sexual [act] or to seize control of the victim in a manner to facilitate the accomplishment of [a] sexual [act] without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704, 709 (2002).

The victim testified that defendant caught her by surprise when she grabbed the victim from behind and carried her into the bathroom. Once inside the bathroom, defendant closed the door, locked it, and blocked the victim's access to the door. Defendant used this opportunity to facilitate the accomplishment of sexual contact. The victim also testified that she kept trying to push defendant away, but defendant grabbed her shoulder and pushed her against the wall. Defendant touched the victim's vagina with her mouth and fingers, kissed the victim's neck, and grabbed the victim's breasts from outside her nightgown. Furthermore, the victim testified that at some point defendant asked if she could see "the [p***y]" and stated that she "wanted to [f**k] [the victim] today." The testimony establishes that defendant intended to touch the victim's intimate body parts for a sexual purpose. A victim's testimony standing alone may be sufficient to support a defendant's conviction under MCL 750.520e(b). See MCL 750.520h; *People v Szalma*, 487 Mich 708, 724; 790 NW2d 662 (2010). Therefore, the victim's testimony alone was sufficient for the jury to conclude, beyond a reasonable doubt, that defendant was guilty of CSC-IV.

Additionally, ample evidence existed in the form of corroborating evidence and physical evidence. In support of the victim's testimony, the victim's boyfriend and neighbor, to whose apartment the victim fled after the assault, testified that the victim told him immediately after the incident that defendant had trapped her in the bathroom and tried to sexually molest her. The victim's supports coordinator testified that the victim called her two hours after the incident and stated that defendant carried her into the bathroom, kissed her, licked in between her legs, and touched her breasts. The victim also reported that defendant wanted to have sex with her. Next, a responding police officer testified that he interviewed the victim at the scene and although he had difficulty understanding her broken English, he was able to deduce defendant carried the victim into the bathroom and that she "kissed [the victim] on her breasts and then . . . [the victim] pointed at her vaginal area and indicated . . . [defendant] licked there." Each of these witnesses testified that they observed bruises on the victim's arm, consistent with her testimony that defendant bruised her arms when she held her up against the bathroom wall.

Having considered all the evidence, it is clear that the jury found the victim's version of events more credible than defendant's, and we will not interfere with the jury's credibility determination. See *Eisen*, 296 Mich App at 331. Accordingly, when viewed in a light most

favorable to the prosecution, ample evidence existed to support defendant's CSC-IV conviction. *Gaines*, 306 Mich App at 296.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause