*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 25, 2020

Plaintiff-Appellee,

v

No. 344225
Wayne Circuit Court
LC No. 17-006791-01-FC

DIONTE ODELL LAVINGTON,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions for first-degree murder, MCL 750.316, being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced to life in prison without parole for first-degree murder, 38 months to 5 years' imprisonment for felon-in-possession, and five years' imprisonment for felony-firearm, second offense. We affirm.

## I. BACKGROUND

This case arises out of the death of the victim, CL, on July 19, 2017, in Detroit, Michigan. Several witnesses testified that they saw defendant and CL together at the location where CL was shot. They either saw defendant shoot CL; or they heard gunshots, following which CL was found to have been shot. The witnesses provided somewhat differing accounts, such as what other individuals, if any, were present at the scene, and minor differences in defendant's attire. Defendant testified that he was not present at the shooting, and instead he was seated on the porch of a house at least a block away with "Connie," "Anthony," and "KB[1]." None of those three

---

[1] We use initials in this opinion to refer to the victim and to eyewitnesses, but "KB" was never identified in the record beyond his initials.

individuals were further identified, although Connie and KB were apparently also known to some of the other witnesses.

AI testified that he was a friend of CL, and his testimony implied that he was familiar with defendant. He and CL met with defendant to purchase marijuana from defendant. Defendant and CL got into an argument regarding a small amount of money that CL owed defendant. The argument seemed to escalate and deescalate, sometimes appearing "heated" and sometimes not. Defendant appeared drunk and high on drugs, and he spoke to CL in an aggressive manner. AI left defendant and CL to go to a gas station and heard gunshots. When AI returned, defendant was gone and CL was lying on the ground, having been shot several times. AI believed defendant had "probably" been wearing a white t-shirt, black pants, and a black baseball hat. AI testified that he observed "a couple people in the area" after CL was shot, but nobody with whom he was familiar.

DB testified that he knew defendant and KB, but at the time of the shooting, he did not know who CL was. DB was driving down the street when he saw the person he later learned was CL standing alone. He then also saw defendant and KB approaching. Defendant flagged DB down, and DB stopped. Defendant then approached CL, and DB saw defendant standing less than a foot away from CL. DB heard several gunshots and drove away. DB did not observe defendant actually in possession of a gun. DB believed that defendant was wearing black pants, a black shirt or hoody, and a black baseball hat. Approximately 45 minutes later, he encountered defendant while walking, and defendant instructed DB to tell anyone who asked for "his alibi" that defendant had been at Connie's house all night.

MD testified that he knew both defendant and CL. On the night of the shooting, MD and two friends were sitting on a car in the vicinity of the shooting. MD testified that CL was behind them, and MD believed CL was "hustling." He observed defendant "and a few other guys," one of whom was KB, approach CL. MD initially believed they were "just talking," until defendant told MD and his friends to leave. As they complied, MD observed defendant produce a pistol and start shooting at CL. MD recalled defendant wearing all black, other than red shoes with gray soles.

Defendant testified that he had been with Connie, KB, and Anthony on a porch elsewhere. He testified that he heard gunshots, but he did not see the shooting. CL's death was ruled a homicide, caused by six gunshot wounds. The gun was recovered from a large community dumpster behind Connie's house, inside a grocery bag also containing "gym shoes and some bullets." The gun was tested for DNA. No usable DNA could be extracted from the trigger, but three DNA profiles were found on the grip, one of which was a match to defendant. Both DB and MD testified that they had seen defendant shooting a gun in the air earlier in the day, which they regarded as not unusual behavior for defendant. The parties stipulated that defendant was ineligible to possess a gun at the time of the shooting due to a prior felony conviction. The trial court found defendant guilty as noted above.

## II. RES GESTAE WITNESS

Defendant argues that his due-process rights were violated when the prosecution failed to obtain the presence of, and give the defense notice of, KB, a res gestae witness. We disagree. Because this issue is essentially a question of statutory interpretation, i.e., the nature of the

prosecutor's legal duty, our review is de novo. *People v Carlson*, 466 Mich 130, 136; 644 NW2d 704 (2002).

"A res gestae witness is one who is present at the scene of the alleged crime, at the time of the alleged crime, or one who had occasion to observe the surrounding events and circumstances." *People v Dyer*, 425 Mich 572, 577 n 4; 390 NW2d 645 (1986). "[T]he prosecutor has a duty to attach to the information a list of all witnesses the prosecutor might call at trial and of all known res gestae witnesses, to update the list as additional witnesses became known, and to provide to the defendant a list of witnesses the prosecution intended to call at trial." *People v Koonce*, 466 Mich 515, 520; 648 NW2d 153 (2002), citing MCL 767.40a(1), (2), and (3). "The prosecution is not required to produce at trial the witnesses listed with the information; but, under MCL 767.40a(2), the prosecution has a continuing duty to disclose further res gestae witnesses as they become known." *People v Everett*, 318 Mich App 511, 520-521; 899 NW2d 94 (2017) (citation and punctuation omitted). Moreover, "the prosecutor is now compelled to render reasonable assistance in locating and serving process upon witnesses upon request of the defendant." *Koonce*, 466 Mich at 521, citing MCL 767.40a(5) (footnote omitted).

Importantly, "[t]here is no requirement to exercise due diligence to discover the names of witnesses." *People v Gadomski*, 232 Mich App 24, 36; 592 NW2d 75 (1998). "[T]he purpose of the 'listing' requirement is merely to notify the defendant of the witness' existence and res gestae status." *Id*. (quotation omitted). "[T]o warrant reversal for a violation of MCL 767.40a, defendant must show that he was prejudiced by noncompliance with the statute." *Everett*, 318 Mich App at 523 (quotation omitted). Defendant's argument that the prosecutor was somehow obligated to "obtain the presence of" KB is simply wrong, especially given defendant's correct acknowledgement that the prosecution no longer has a duty to produce a res gestae witness. See *People v Perez*, 469 Mich 415, 418-419; 670 NW2d 655 (2003). Rather, the prosecutor is only required to notify defendant of any *known* res gestae witnesses and help obtain witnesses upon request by the defense. *Id*. Significantly, defendant clearly knew about KB, including KB's identity, and never made any effort to call KB or ask the prosecutor for help obtaining KB. In contrast, it appears that the prosecution does not know who KB is. The prosecutor did not breach its duty.

Even if the prosecution breached a duty to inform the defense of the existence of KB, defendant cannot have suffered any possible prejudice. The purpose of the notice requirement is merely to notify the defendant of the witness's existence and res gestae status. *Gadomski*, 232 Mich App at 36. As noted, defendant already knew about KB's existence and res gestae status, and he never made any request to the prosecutor for assistance in locating KB. Therefore, even if the prosecutor's failure to list KB was an error, it was harmless. *People v Calhoun*, 178 Mich App 517, 522-523; 444 NW2d 232 (1989).

III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution presented insufficient evidence to convict him of first-degree murder, felony-firearm, and felon-in-possession. We disagree.

"When a defendant challenges the sufficiency of the evidence in a criminal case, this Court considers whether the evidence, viewed in a light most favorable to the prosecution, would warrant

a reasonable juror in finding that the essential elements of the crime were proved beyond a reasonable doubt." *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 8 (2011) (quotation and citation marks omitted). The trier of fact may not engage in speculation, but it is entitled to pick and choose what evidence to believe. See *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"[T]he elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation omitted). "Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *Id*. at 242 (footnote omitted). "[S]ome time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id* (quotation omitted). "By the weight of authority the deliberation essential to establish murder in the first degree need not have existed for any particular length of time before the killing." *Id*. at 243 (quotation omitted). "[I]t is often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds.' " *Id*. at 242-243 (citation and quotation marks omitted). "The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances." *Id*. at 243 (quotation omitted).

There is more than sufficient evidence to find that defendant intentionally killed CL. One eyewitness directly observed defendant shoot CL with no indication that CL posed a threat to defendant; two other witnesses additionally provided ample circumstantial evidence from which the trier of fact could also find beyond a reasonable doubt that defendant intentionally killed CL. Defendant provides a summary of each eyewitness's testimony and asserts that they are too inconsistent and incredible to believe, but he provides little explanation of why. The fact that the different witnesses recalled slight variations in defendant's attire is essentially irrelevant. The fact that the different witnesses recalled different other people with defendant is hardly inconsistent. One eyewitness was not directly on the scene during the shooting, and the other two eyewitnesses both stated that KB was present and implied that they did not know all of the others. We find no reason to interfere with the trial court's credibility assessment.

There was also sufficient evidence that defendant killed CL with premeditation and deliberation. One eyewitness described CL and defendant "feuding" about money defendant owed CL. According to AI, defendant was speaking to CL in an aggressive manner, and the conversation seemed to escalate and deescalate before CL was shot. The fact that defendant instructed one eyewitness to leave before apparently directly approaching CL and shooting him strongly suggests that defendant had formed the intent to kill CL with ample time in which to take a "second look." A reasonable trier of fact could find beyond a reasonable doubt that defendant intentionally killed CL with deliberation and premeditation.

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018). The evidence clearly established that defendant effectuated the murder of CL by shooting CL. There being no obvious way to shoot someone without possessing a firearm, a reasonable trier of fact could find beyond a reasonable doubt that defendant possessed a firearm during the commission of a felony.

The elements of felon-in-possession are: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016). Defendant stipulated to the admission of evidence that he had a specified felony from 2012, which prohibited him from possessing a firearm on July 19, 2017. Defendant's DNA was found on the handgun found nearby, and aside from the evidence that defendant shot CL, eyewitnesses indicated that they had observed defendant with the gun earlier in the day. Thus, there was sufficient evidence presented to find defendant guilty of felony-firearm.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that he was denied his constitutional right to the effective assistance of counsel. We disagree.

### A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id.* at 188. Because no *Ginther*[2] hearing has been held, there are no findings of fact for us to review, so we are limited to mistakes apparent on the record. *Id.* Nevertheless, we conduct our review mindful that defendant filed two motions in this Court to remand for a *Ginther* hearing, both of which this Court denied without prejudice. *People v Lavington*, unpublished order of the Court of Appeals, entered February 12, 2019 (Docket No. 344225); *People v Lavington*, unpublished order of the Court of Appeals, entered May 1, 2019 (Docket No. 344225). We will therefore afford defendant the benefit of any doubt whether an evidentiary hearing is appropriate.

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted). There is also a "strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "This presumption can only be overcome by a showing of counsel's failure to perform an essential duty, which failure was

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

prejudicial to the defendant." *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). However, "trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

## B. FAILURE TO PREPARE A CONSISTENT DEFENSE

Defendant argues that trial counsel was ineffective for failing to prepare a consistent defense. Specifically, defendant contends that trial counsel failed to properly prepare a defense strategy or prepare defendant for trial, and as a result, defendant and trial counsel presented inconsistent defenses. We disagree.

Defendant accurately points out that defense counsel informed the trial court during opening statements that defendant would testify that he acted in self-defense and disposed of the gun because he was aware that he was not legally allowed to have a gun. Defendant did in fact testify as the final witness at trial. Contrary to the opening statement, defendant testified that he was not present at the scene, but instead, he was at his home with KB, Connie, and his neighbor Anthony. Defendant contends that he heard the gunshots, but he is unaware of what occurred.

We find nothing in the record to suggest that an alibi defense was ever contemplated by defendant or his attorney prior to defendant taking the stand. In contrast, in light of the evidence, a self-defense theory was highly reasonable. There was overwhelming evidence that defendant shot CL—however, as defense counsel pointed out, there was little, if any, explanation of *why* defendant shot CL. Furthermore, two telephone calls defendant made from jail were admitted, and although we have not been provided with their contents, defendant apparently discussed in one of them having acted in self-defense. Finally, it would have been a fair extrapolation from the evidence that the argument between defendant and CL was mutual and had the potential to become mutually violent. A self-defense theory was reasonable, and, if believed, it could have at least resulted in an acquittal of first-degree murder.

Defendant's testimony that he was not present at the scene, in complete conflict with the other witnesses' testimony, is therefore curious. We agree with the prosecutor that the only likely explanation is that defendant made a last-moment decision to testify that he was not present, contrary to what counsel obviously believed would occur. The record clearly shows that counsel did prepare a reasonable defense strategy, and it strongly implies that defendant was aware of that strategy at the beginning of the trial. We cannot fault counsel for defendant choosing to go off-script. In any event, given the overwhelming evidence that defendant shot CL, we find no reason to believe the outcome of the trial might have changed if counsel had pursued a theory that defendant was not present during the shooting.

## C. FAILURE TO CALL WITNESSES FOR THE DEFENSE

Defendant argues that trial counsel was ineffective for failing to call corroborating witnesses to testify at trial. We disagree.

Defense counsel's failure to undertake a reasonable investigation may constitute ineffective assistance of counsel. *Trakhtenberg*, 493 Mich at 51-55. However, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be

matters of trial strategy, which [this Court] will not second-guess with the benefit of hindsight," *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation and footnote omitted). Moreover, "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id*. at 398. A substantial defense is one that affects the outcome of the trial. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994).

Defendant's argument is premised on the theory that counsel was ineffective for failing to call various individuals, such as Connie and KB. However, defendant has *still* not provided any identifying information for any of these individuals, nor has he provided an affidavit from any of them setting forth what testimony they might have provided. Defendant asserts that testimony from these witnesses "would have cast doubt on the prosecution's case," but defendant fails to set forth how their testimony would have cast doubt on the prosecution's case. Defendant may not simply set forth that these witnesses would have assisted the defense, because this Court will not "search for a factual basis to sustain or reject his position." *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (quotation omitted). Furthermore, these individuals were known to defendant, and counsel was almost certainly aware of their existence. Calling individuals to testify that defendant was not present at the shooting would conflict with a self-defense theory. Declining to call any witnesses allegedly present for the shooting was, in the absence of any offer of proof to the contrary, almost certainly a sound tactical decision. Finally, defendant's failure to provide an offer of proof also precludes us from having any reason to believe the outcome of the proceedings might have been different if any of these individuals had been called to testify.

## D. FAILURE TO OBJECT TO THE PROSECUTION'S FAILURE TO OBTAIN KB OR NOTIFY THE DEFENSE THAT KB WAS A RES GESTAE WITNESS

Defendant argues that trial counsel was ineffective for failing to object to the prosecution's failure to produce KB for trial or notify the defense that KB was a res gestae witness. We disagree. As discussed above, the prosecutor was not under a duty to obtain or identify KB, and the prosecutor did not list KB, or anybody with matching initials, as a witness. As also discussed above, defendant has failed to provide any indication that KB's testimony might have affected the outcome of the proceedings.

## E. ENTITLEMENT TO A *GINTHER* HEARING

Defendant contends that this Court should remand for a *Ginther* hearing for further factual development to determine whether trial counsel was ineffective. We disagree. After fully reviewing the record, we conclude that defendant clearly received effective assistance of counsel. We are not persuaded, even giving defendant the benefit of any doubt, that a *Ginther* hearing might indicate that counsel had not been effective. We therefore decline to remand for a *Ginther* hearing.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel