**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 29, 2002**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

No. 118915

ERIC STEVEN CARLSON,

    Defendant-Appellant.

_____

PER CURIAM

The defendant was charged with third-degree criminal sexual conduct (CSC III), but the district court refused to bind the defendant over to stand trial. The circuit court affirmed. The Court of Appeals reversed and remanded for clarification of the district court judgment. Because the district court's decision in this matter, perhaps based on dicta in *People v Patterson,* 428 Mich 502; 410 NW2d 733 (1987), may have been improperly influenced by a view that the prosecution had to present evidence that defendant "overcame" the victim, we vacate the judgment of the Court of Appeals and

remand this case to the district court for reconsideration consistent with this opinion.

I

This case concerns a January 23, 2000, incident involving two students of the same high school, about six months apart in age. Charged with third-degree criminal sexual conduct "using force or coercion to accomplish the sexual penetration," in violation of MCL 750.520d(1)(b)[1], the defendant was brought before the district court for a preliminary examination. The factual record in this case consists of the transcript of that proceeding.

The complainant was a sixteen-year-old tenth grader when these events occurred.[2] She had known the defendant between eighteen and twenty-four months. About two weeks before the January 23, 2000, incident, defendant had driven the

---

[1] MCL 750.520d(1) provides:

> A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:

> * * *

> (b) Force or coercion is used to accomplish the sexual penetration. Force or coercion includes but is not limited to any of the circumstances listed in [MCL 750.520b(1)(f)(i) to (v)].

[2] The factual account set forth in this opinion comes from the testimony of the complainant on direct examination at the defendant's preliminary examination. This case has not been tried, and we treat these facts as true only for the purpose of our present analysis.

2

complainant to the parking lot of a Meijer store where consensually he digitally penetrated her and she manually masturbated him.

On January 23, the defendant telephoned the complainant after school to ask if she wanted to "hang out." She agreed. He picked her up in an automobile and drove her to the parking lot of a YMCA. The complainant allowed the defendant to unbutton her blue jeans and to digitally penetrate her. The complainant testified, "He started making out again, the same stuff, and then wanted to have sex with me and I said no. He asked me why. I just said because I don't want to." After an interval, the defendant repeated his request that they have sexual intercourse. The complainant again said "no," explaining that she "didn't want to." "He [next] asked me if he could just stick [it] in once and I said no." He essentially repeated the question several times, and she would not answer him "[bec]ause I didn't want to answer him any more." She acknowledged that she did not physically restrain or push him away and then said, "He stuck it in anyways and kept moving and asked me if I was enjoying it and I said I didn't want to do it." When asked how he got it in, she said, "He got on top of me and put it in."

II

The assistant prosecutor moved that the defendant be bound over for trial. In response, defense counsel argued

3

that lack of consent by a complainant is not the same thing as force or coercion by a defendant. The assistant prosecutor disagreed:

> There doesn't have to be bruises. There has to be [sic] against the will. This was not a willing partner at this time and that's all the force that is necessary plus you look at all the circumstances. This is your classic example of date rape. When an individual is a situation [sic] where I'm not going to take no for an answer, and he wanted what he wanted, and he took it from her without her permission when she said no. That's force or coercion and that means he should be bound over, Your Honor.

The district court denied the prosecution's motion to bind over defendant on the CSC III charge on the ground that there was "[in]sufficient evidence of overcoming the victim through the use of physical force that rises to the level required by this statute." The district court also stated that there was "no evidence of any threats or coercion here." Of particular importance, the district court elaborated:

> It is the argument of the prosecutor, that it is enough that she said no and that they don't have to establish that she resisted. It is true that resistance need not be shown. *But there still has to be, in my opinion, enough——some evidence that Defendant used physical force to overcome her.* Again, it is the prosecution's argument that the fact that she said no yet he continued, got on top of her and they had these relations; that that satisfies the definition, or that the facts in that scenario satisfies [sic] the definition of physical force intended by the statute.
>
> *. . . [T]here has been no evidence presented that he overcame her in any physical way other than her testimony that he got on top of her. And while it's not necessary to show lack of resistance, I believe that the legislature intended and logic requires that there be some evidence of actual*

4

*physical force to overcome her.* There's no indication, and we're getting really kind of detailed here, but there's no indication he pushed, or held her down, or forced her legs apart, there's no indication he did anything to force her other than to get on top of her. There's no indication of any fear or physical resistance on her part and even though it's not necessary that the prosecution show resistance, there is no indication of any, and that enters into my judgment as a factor as to whether or not there was force. [Emphasis added.]

The prosecuting attorney appealed, but the circuit court affirmed the judgment of the district court. The circuit court explained:

Both parties were apparently in such a state of undress from their admittedly mutually agreeable sexual activity that no further undressing was necessary. The Defendant then got on top of her and inserted his penis into her vagina.

* * *

In this case there is no evidence that by getting on top of her the Complainant was rendered helpless or that Defendant used superior strength to overcome her. Although the Prosecuting Attorney would like the Court to draw that inference it is just as fair an inference that in doing this Defendant did nothing more than assume a normal sexual position. There is no evidence that Defendant forced Complainant's legs apart or placed her body in a position to receive him. This may have happened but there is no evidence of it in the record leaving only speculation for the Court to draw such a conclusion. The inference from the record is just as probable that in addition to no longer answering Defendant's questions about engaging in sex she also cooperated by placing her body in a position to receive Defendant just as she had cooperated in the prior sexual activity.

The Court of Appeals reversed on the ground that two of

5

its earlier decisions[3] "clearly establish that when a victim refuses to engage in sexual activities and the defendant ignores the refusal and penetrates the victim anyway, sufficient evidence exists to satisfy the force or coercion requirement." As an alternative ground for reversal, the Court cited the "surprise" circumstance described in MCL 750.520b(1)(f)(v), saying that the complainant "may have been surprised that an acquaintance, defendant, would disregard her failure to consent and proceed against her wishes."

The Court of Appeals held that "the examining magistrate erroneously concluded that the element of force or coercion had not been established." Rather than reverse outright, however, the Court remanded the case for clarification of the district court's opinion, stating that the district court may have relied in part on its assessment of the complainant's credibility.

In dissent, Judge CAVANAGH distinguished the earlier decisions cited by the majority, and said that the district court had not erred in its conclusion that there was insufficient evidence of force or coercion to bind the defendant over for trial.

The defendant has applied to this Court for leave to appeal.

---

[3] *People v Kline*, 197 Mich App 165, 166-167; 494 NW2d 756 (1992); *People v Brown*, 197 Mich App 448, 450-451; 495 NW2d 812 (1992).

We review for abuse of discretion a district court's decision whether to bind a defendant over for trial. *People v Justice*, 454 Mich 334, 344; 562 NW2d 652 (1997). To the extent that this inquiry requires examination of the meaning of the underlying criminal statute, we face a question of law that we review de novo. *People v Mass*, 464 Mich 615, 622; 628 NW2d 540 (2001).

Central to resolution of this case is the meaning of the phrase "force or coercion" as used in MCL 750.520d(1)(b), the statutory provision that defendant was accused of violating by using force or coercion to accomplish a sexual penetration of the complainant.[4]

---

[4] This provision states that "[f]orce or coercion includes *but is not limited to* any of the circumstances listed in [MCL 750.520b(1)(f)(i) to (v)]." Emphasis added. In turn, MCL 750.520b(1)(f)(i) to (v) enumerates the following circumstances as involving force or coercion:

(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

As set forth above, the district court indicated that, to support the charge of CSC III, there had to be evidence that defendant "used physical force to overcome" the complainant and that the prosecution failed to present such evidence in this case.  This view may have derived from dicta in our opinion in *Patterson, supra.*  In this regard, we note that the circuit court, in affirming the district court's refusal to bind over defendant, quoted out of context from *Patterson*, supra at 523 as follows:

> The force to which reference is made is not the force inherent in the act of penetration but the force used or threatened to overcome or prevent resistance by the female.  [Emphasis omitted.][5]

An understanding of *Patterson* should begin with the highly peculiar circumstances of that case.  The defendant in *Patterson* was accused of inappropriately touching the victim's private area through her underwear while she was asleep.  See *Patterson, supra* at 505-506.  The prosecution charged him with fourth-degree criminal sexual conduct (CSC IV) on the basis of

---

(iv)  When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

(v)  When the actor, through concealment or by the element of surprise, is able to overcome the victim.

[5] This sentence was set forth in *Patterson* as a quotation from the decision of the California Court of Appeal in *People v Kusumoto,* 169 Cal App 3d 487, 493; 215 Cal Rptr 347 (1985), which was in turn quoting 3 Wharton, Criminal Law (14th ed), §§ 287-288, pp 30-34.

MCL 750.520e(1)(a), as then in effect, which prohibited accomplishing sexual contact by "[f]orce or coercion,"[6] and the defendant was convicted of that charge. *Patterson, supra* at 506, 509. Puzzlingly, the prosecution did *not* charge the defendant under a different subsection of the CSC IV statute, MCL 750.520e(1)(b) as then in effect, which expressly prohibited having sexual contact with a person "[t]he actor knows or has reason to know . . . is . . .physically helpless."[7] This is particularly difficult to understand because "physically helpless" was specifically defined in the criminal sexual conduct statute, MCL 750.520a(i) as then in effect, to include a person who is "asleep." Thus, as the *Patterson* Court indicated, the alleged conduct in that case would squarely have fallen under the subsection of the CSC IV statute that, among other things, prohibited sexual contact with a "physically helpless" person, but the prosecution did not rely on that subsection. *Patterson, supra* at 510, n 8.

In a quite expansive opinion, this Court rejected the prosecution's attempt to fit the facts of *Patterson* into the "force or coercion" subsection of the CSC IV statute. The actual basis for this holding was set forth as follows:

> [T]he Legislature intended to treat sexual assaults accomplished by force or coercion

---

[6] A substantially similar provision is codified in the present CSC IV statute as MCL 750.520e(1)(b).

[7] A substantially similar provision is codified in the present CSC IV statute as MCL 750.520e(1)(c).

> separately from assaults on physically or mentally incapacitated victims.
>
> Our holding is supported by the rules of statutory construction. Criminal statutes must be strictly construed. If this Court were to interpret defendant's conduct in this case to be included within the provisions of subsection 1(a) of the fourth-degree criminal sexual conduct statute [prohibiting the use of "force or coercion" to accomplish sexual contact], this would render the language of subsection (1)(b) of the statute [prohibiting, in pertinent part, sexual contact with a "physically helpless" person] a nullity. [*Patterson, supra* at 526-527.]

Simply put, the actual rationale for the holding in *Patterson* was that, because the Legislature included a separate subsection in the CSC IV statute prohibiting sexual contact with a "physically helpless" person (including a sleeping person), it did not view such conduct standing alone as coming within the "force or coercion" subsection of the statute.[8]

This language in *Patterson,* quoting the California decision in *Kusumoto* to the effect that the prohibited "force" with regard to sexual penetration "is not the force inherent in the act of penetration but the force used or threatened to overcome or prevent resistance by the female" was mere dicta. The language from *Kusumoto* was set forth in connection with the argument of the defendant in *Patterson* that this Court "adopt the approach used in" *Kusumoto*. *Patterson, supra* at

---

[8] Of course, this actual holding of *Patterson* is inapposite to the present case in which the complainant was not sleeping when the sexual penetration at issue occurred, but rather was awake and conscious of being sexually penetrated.

10

521. However, nowhere in *Patterson* did this Court state that it was actually adopting any rule of law derived from *Kusumoto*. Rather, as set forth above, this Court's holding in *Patterson* was based on an analysis of the structure of the CSC IV statute without any mention of *Kusumoto*.[9]

Having established that the pertinent language from *Patterson* was mere dicta, we now consider whether the statutory provision at issue, MCL 750.520d(1)(b), prohibiting the accomplishment of a sexual penetration by "force or coercion" includes any requirement of "overcoming" the victim. As we will explain, we conclude that it does not because imposing such a requirement would amount to the improper insertion of an additional element beyond that required by the statutory language. In other words, if "force or coercion" is used to accomplish a sexual penetration, the statute has been violated.

To be sure, the "force" contemplated in MCL 750.520d(1)(b) does not mean "force" as a matter of mere physics, i.e., the physical interaction that would be inherent in an act of sexual penetration, nor, as we have observed, does it follow that the force must be so great as to overcome the complainant. It must be force to allow the accomplishment

---

[9] Some confusion might have resulted from this Court's use of italics to emphasize the pertinent language in *Kusumoto*. See *Patterson, supra* at 523. This might lead a hurried reader to incorrectly treat the emphasized language as a holding of this Court.

of sexual penetration when absent that force the penetration would not have occurred. In other words, the requisite "force" for a violation of MCL 750.520d(1)(b) does not encompass nonviolent physical interaction in a mechanical sense that is merely incidental to an act of sexual penetration. Rather, the prohibited "force" encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes.

Given this understanding of the CSC III statute, we conclude that the district court erred in viewing it as necessary for there to be "some evidence of actual physical force to overcome" the complainant to support a charge of CSC III. While we are uncertain from the record before us, this error *may* have affected the district court's analysis in declining to bind over defendant for trial. Accordingly, we conclude that this case should be remanded to the district court for reconsideration of whether the evidence presented at the preliminary examination provided a showing of probable cause that there was force or coercion used to accomplish sexual penetration in light of the clarification provided by this opinion.[10]

---

[10] In light of our resolution, it is unnecessary to address the legal conclusions in the Court of Appeals opinion.

12

V

The district court's indication that a violation of MCL 750.520d(1)(b) requires a showing that a defendant "overcame" a victim, possibly influenced by dicta in *Patterson* is incorrect. Because this error may have affected the district court's analysis in this case, we vacate the Court of Appeals opinion and remand this case to the district court for reconsideration, consistent with this opinion, of the prosecution's request that defendant be bound over for trial on a charge of CSC III. We direct the district court to issue a written decision addressing the present issue within forty-five days of the release of this opinion. We retain jurisdiction to review this matter following the district court's reconsideration.

CORRIGAN, C.J., and CAVANAGH, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                    No.  118915

ERIC STEVEN CARLSON,

    Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

I dissent because I do not believe that a per curiam opinion is the appropriate means for deciding this case. Rather, if the Court is going to decide what is meant by the words "force or coercion," as used in MCL 750.520d(1)(b), it should do so after the benefit of briefing and oral argument.