*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAYMOND COREY SNOVER,

Defendant-Appellant.

UNPUBLISHED
April 23, 2020

No. 343930
Tuscola Circuit Court
LC No. 17-014109-FC

Before: GLEICHER, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant pleaded no contest to two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(f), and was sentenced to 15 to 50 years in prison. He thereafter moved for resentencing and to withdraw his plea. The trial court granted defendant's motion to reduce his score under the sentencing guidelines for offense variable (OV) 11 from 50 points to 25 points, but otherwise denied his motion. Defendant appeals, challenging the accuracy of his plea and the scoring of his sentencing guidelines. We vacate the trial court's order denying defendant's motion to withdraw his guilty plea, and we remand to the trial court to permit defendant the opportunity to withdraw his plea.

## I. FACTS

Defendant was accused of sexually assaulting BM, his girlfriend's thirteen-year-old niece. On the night in question, BM, her mother, the mother's boyfriend, and the boyfriend's child were visiting the home shared by defendant and his girlfriend and their infant child. Eventually, everyone else at the home that night went to bed, leaving defendant and BM watching television. According to BM, she and defendant were sitting together on the floor of the living room when defendant asked her to "crack his back" by walking on it, and she agreed. Defendant then asked her to rub his back, and she agreed; she later reported that she did not think this was a particularly odd request because some people sometimes ask her to rub their backs. BM reported that defendant then "started to kind of rub my legs," then started "cuddling" her, put his hand under her shirt and moved his hand toward her breast, and kissed her. According to BM, she then left the room and went to the bathroom.

-1-

BM returned to the living room and sat on the couch, where defendant joined her and began "cuddling" her again. BM reported that defendant began to rub her right rib cage and stomach beneath her shirt and "grabbed her face" and kissed her. She stated that defendant touched her right thigh and buttocks, and put his hand under her pants and started to rub and touch her "vaginal area," and then "grabbed her hand [and] put it on his penis over his shorts." BM reported that at one point, defendant grabbed her hair and pulled her toward him, and that at another point he pushed her head down, but she resisted the pushing. Defendant then "put his finger in [BM's] vaginal hole" and asked her if she liked it and "if she wanted him to keep doing that." BM reported that defendant put his finger in her vagina once, but also that "he kept going in and out, but . . . he kind of had it in the whole time." Defendant also put BM's hand under his shorts on his penis. According to BM, defendant kissed her again and told her not to tell anyone. She then left the room again and stayed in the bathroom until she was sure defendant was asleep, then spent the rest of the night awake on the couch to ensure that her mother's boyfriend's nine-year old daughter, who was sleeping nearby on a mattress, was not harmed by defendant.

When interviewed by police, defendant acknowledged that he watched a movie with BM on the night in question, but explained that he had been drinking heavily throughout that day and did not remember the details of the evening. Later in the interview, however, he admitted that he had kissed BM on the lips while they were sitting on the couch together, put his hand inside her pants, put his finger in her vagina, and made her touch his penis. Near the end of his interview with police, defendant wrote a letter to BM apologizing for the incident.

Defendant was charged with 16 counts of criminal sexual conduct arising from the incident, including three counts of first-degree CSC. Defendant thereafter entered into a plea agreement in which he pleaded no contest to two counts of first-degree CSC and the remaining 14 counts were dismissed. The parties agreed that the factual basis for defendant's plea was an exhibit marked as "Defendant's Exhibit 1," which included the report prepared from the forensic interview of BM, the report of defendant's police interview, and the medical report documenting BM's examination and medical history by the sexual assault nurse examiner. The trial court accepted the exhibit as the factual basis for defendant's plea, and sentenced defendant to 15 to 50 years in prison.

Defendant moved before the trial court for resentencing and/or to withdraw his plea. Although the trial court granted defendant's motion to reduce his score for OV 11 from 50 points to 25 points, the adjustment to the scoring did not alter the calculation of the sentencing guidelines. The trial court otherwise denied defendant's motion. This Court denied defendant's delayed application for leave to appeal to this Court. *People v Snover,* unpublished order of the Court of Appeals, entered July 3, 2018 (Docket No. 343930). The Michigan Supreme Court has now remanded this matter to us for consideration as on leave granted. *People v Snover*, 503 Mich 987 (2019).

## II. DISCUSSION

Defendant contends that the trial court abused its discretion by denying his motion to withdraw his plea of no contest to the two counts of first-degree CSC. Defendant argues that the plea was invalid because it is not supported by a factual basis on the record, specifically that (1) the facts do not establish that defendant used force or coercion, and that (2) the facts at most established only one penetration, forming the basis for only one count of first-degree CSC.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

This Court reviews a trial court's decision on a motion to withdraw a plea for an abuse of discretion, which occurs when the trial court's decision falls outside the range of principled outcomes. *People v Seadorf*, 322 Mich App 105, 109; 910 NW2d 703 (2017). A defendant's plea of no contest or "nolo contendere" indicates that the defendant "does not wish to contest his factual guilt," and therefore "any claims or defenses which relate to the issue of factual guilt are waived by such a plea." *People v New*, 427 Mich 482, 493; 398 NW2d 358 (1986). To be entitled to withdraw a plea after sentencing, a defendant must establish a defect in the plea-taking process. *People v Brown*, 492 Mich 684, 693; 822 NW2d 208 (2012). Proceedings regarding no contest pleas and guilty pleas are governed by MCR 6.302. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). Under that court rule, a valid plea must be understanding, voluntary, and accurate. *Brown*, 492 Mich at 688-689. To ensure that a plea is accurate, the trial court must establish a factual basis for the plea. MCR 6.302(D); *People v Pointer-Bey*, 321 Mich App 609, 616; 909 NW2d 523 (2017). With regard to a plea of no contest, the court rule provides:

> **(D) An Accurate Plea**.
>
> * * *
>
> (2) If the defendant pleads nolo contendere, the court may not question the defendant about participation in the crime. The court must:
>
> (a) state why a plea of nolo contendere is appropriate; and
>
> (b) hold a hearing, unless there has been one, that establishes support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading. [MCR 6.302(D)(2).]

In this case, the parties stipulated to the facts contained in Defense Exhibit 1 submitted to the trial court. Generally, the factual stipulations of the parties bind the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 385; 741 NW2d 61 (2007). However, although the parties can stipulate to the facts of an incident, the parties cannot stipulate to a conviction that is not supported by those facts. Rather, in Michigan, a trial court is required to evaluate the factual basis for a defendant's plea before accepting the plea, and not only "the mere expression of willingness by the prosecutor and defendant to strike a bargain." *People v White*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346901); slip op at 4 (quotation marks and citation omitted).

Although the parties stipulated to the facts in Defendant's Exhibit 1, defendant contends that those facts do not support the convictions of first-degree CSC. The test on appeal for whether the factual basis of a plea adequately supports that plea is whether a trier of fact could properly convict on that factual basis. *People v Haack*, 396 Mich 367, 376-377; 240 NW2d 704 (1976). If an inculpatory inference reasonably can be drawn from the facts admitted by the defendant, a factual basis for the plea has been established. *Id*.

## B. FORCE OR COERCION

A defendant may be found guilty of first-degree CSC under MCL 750.520b(1)(f) if the defendant (1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration. *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). The statute provides, in pertinent part:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. Force or coercion includes, but is not limited to, any of the following circumstances:
>
> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.
>
> (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.
>
> (*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" include threats of physical punishment, kidnapping, or extortion.
>
> (*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.
>
> (*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim. [MCL 750.520b(1)(f).]

Defendant argues that the facts as stipulated do not establish the element of force or coercion. "Force" as prohibited by the statute "encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002). Force or coercion is not limited to physical violence, *People v Brown*, 197 Mich App 448, 450; 495 NW2d 812 (1992), and whether the defendant used force or coercion is to be determined in light of all the circumstances. *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012). This Court has also observed that coercion "may be actual, direct, or positive, as where physical force is used to compel act[s] against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to [the] other to do what his free will would refuse." *People v Green*, 313 Mich App 526, 539; 884 NW2d 838 (2015) (quotation marks and citations omitted).

-4-

In this case, the stipulated facts that formed the factual basis of the plea adequately demonstrate force or coercion. According to BM, during the assault, defendant grabbed her face and hair, kissed her, tried to force her head down, put his hand under her pants, and put her hand under his shorts and made her touch his penis. We conclude that this evidence was sufficient to demonstrate force or coercion toward a 13-year-old victim.

## C. BASIS FOR SECOND COUNT OF FIRST-DEGREE CSC

Under MCL 750.520b, a person is guilty of first-degree criminal sexual conduct if he or she engages in sexual penetration with another person under any of the circumstances articulated in the statute. "Sexual penetration" is defined by MCL 750.520a(r) as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." A defendant can be charged and convicted for multiple penetrations occurring during a single assault. See *People v Dowdy*, 148 Mich App 517, 521; 384 NW2d 820 (1986). However, a single act of sexual penetration cannot result in multiple convictions and sentences under MCL 750.520b. *People v Johnson*, 406 Mich 320, 331; 279 NW2d 534 (1979); *People v Garland*, 286 Mich App 1, 6; 777 NW2d 732 (2009).

In this case, defendant pleaded guilty to two counts of first-degree CSC. The criminal acts used to support both counts, however, were identical. Specifically, both counts alleged that defendant "did engage in sexual penetration to-wit: finger(s) in vagina with [BM], causing personal injury to said victim and using force or coercion to accomplish sexual penetration; contrary to MCL 750.520b(1)(f)." The prosecution argues that the evidence supports a finding that during the assault, defendant more than once penetrated the victim digitally. BM, however, reported that defendant put his hand on her "vaginal area" under her pants and "started rubbing her," ultimately "shov[ing] his hand farther down my pants and . . . put[ting] his finger in my vaginal hole." BM stated that after defendant put his finger inside her vagina, "he kept going in and out, but . . . he kind of had it in the whole time," suggesting that defendant's finger intruded into her "genital opening" only once. This is consistent with defendant's statement to police that he put one finger in the victim's vagina; he did not describe any additional penetrations. These facts establish only a single penetration and therefore do not support conviction of more than one count of first-degree CSC.

We therefore conclude that because the stipulated facts that formed the basis of the plea fail to establish more than one penetration, the plea-taking process did not establish a factual basis for the plea to a second count of first-degree CSC, and thus was not accurate. Having identified a defect in the plea-taking process, defendant was entitled to an opportunity to withdraw his plea. See MCR 6.310(C).

We vacate the trial court's order denying defendant's motion to withdraw his guilty plea, and we remand to the trial court to permit defendant the opportunity to withdraw his plea. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Anica Letica