*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL FAYIA,

        Defendant-Appellant.

UNPUBLISHED
October 12, 2023

No. 363993
Ingham Circuit Court
LC No. 18-000124-FH

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Following a trial, a jury convicted defendant of one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d (multiple variables). The trial court sentenced defendant to serve 75 to 180 months' imprisonment. Defendant appeals as of right. We affirm.

## I. BACKGROUND

Defendant and the victim dated for several months in 2014. After the victim and defendant broke up, they did not have any contact with each other until 2015. The victim agreed to meet with defendant during her spring break, but she told defendant that she wanted their relationship to remain platonic.

Defendant picked the victim up from the home of her "sister,"[1] and the pair dined at a restaurant and later stopped to purchase a bottle of wine. Defendant and the victim returned to the victim's sister's house, where they drank wine and continued to talk. Eventually, defendant asked the victim if he could spend the night. The victim asked her sister, who allowed defendant to stay overnight as long as he went downstairs to the basement.

---

[1] The victim referred to this family member, who had been in a relationship with the victim's brother, as her "sister" or "sister-in-law."

The victim went to the basement with defendant to show him around and to tell him where he could sleep. Defendant began touching the victim, and the victim reminded him that she wanted to keep things platonic. Even so, defendant continued to touch the victim, who instructed him to go to sleep on a bed in the basement.

The victim also went to sleep on the other side of the bed only to wake up to find that her pants were off. She felt pressure "not only on top of [her]," but also "inside of [her]." The victim testified that she did not take her pants off and that the pressure felt like she was being penetrated by defendant's penis. The victim tried to push defendant off, but he was "very strong," and he grabbed onto the victim's wrists. When defendant stopped, he said, "Don't call the police."

The victim ran upstairs to the kitchen and retrieved a knife. Eventually, the victim left the kitchen and went back downstairs, where defendant was sleeping. The victim hit defendant, who woke up and apologized to her. The victim asked defendant why he raped her, and defendant responded that it was not rape. When defendant left, the victim told her sister what had happened, and they called the police.

A sexual assault nurse examiner ("SANE") later evaluated the victim, who complained of tenderness around her clavicle, her lower breast area, her left and right axillary muscles, and her pubis region. The SANE nurse was not able to determine whether sexual intercourse had occurred recently.

The victim subsequently stayed in contact with defendant and indicated to law enforcement that she did not wish to participate in a prosecution at that time. In a recorded phone conversation in 2016, the victim asked defendant why he raped her, and, in response, defendant stated, "Why wouldn't I? Like, I couldn't resist myself." The victim then opted to pursue prosecution and forwarded the recording to a detective. The tape recording was played and admitted during trial. At trial, defendant's foster father testified for defendant and opined that he did not believe that defendant was the speaker on the recording.

## II. SUFFICIENCY OF EVIDENCE

Defendant first argues that due process requires reversal of his conviction because the prosecutor presented insufficient evidence to establish that he sexually penetrated the victim. We disagree.

We review de novo a challenge to the sufficiency of the evidence to support a conviction. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id*., quoting *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant was charged with CSC-III on alternative theories under MCL 750.520d(1)(b) (force or coercion) or MCL 750.520d(1)(c) (physically helpless victim). Under

MCL 750.520d(1)(b), the prosecution must prove that "(1) defendant engaged in sexual penetration with the victim, and (2) '[f]orce or coercion is used to accomplish the sexual penetration.' " *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012), quoting MCL 750.520d(1)(b) (alteration in *Eisen*). "[F]orce encompasses the use of force against the victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002). See also MCL 750.520b(1)(f). Alternatively, to sustain a conviction under MCL 750.520d(1)(c), the prosecution is required to prove that the defendant engaged in sexual penetration with another person and that the defendant "kn[ew] or [had] reason to know that the victim [was] mentally incapable, mentally incapacitated, or physically helpless." See MCL 750.520d(1)(c). A victim is physically helpless when "unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). A sexual assault victim's testimony, standing alone, is enough to support a conviction. See MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under [MCL 750.520b to MCL 750.520g].").

In this case, the victim's testimony established the elements of MCL 750.520d(1)(b) or (c). The victim testified that she woke up to find defendant on top of her, debating "if he was going to or not." The victim's pants had been removed, and she felt defendant penetrating her vagina with his penis. The victim told defendant to stop, and she tried to push him off; however, defendant was very strong and had grabbed her wrists. Defendant's arguments that there was insufficient evidence to demonstrate that he penetrated the victim because there were no eyewitnesses to the assault, the victim had no injuries, and the sexual assault examination kit was destroyed[2] are unpersuasive because no corroboration is required to support a victim's testimony that a penetration occurred. See MCL 750.520h.

Defendant's challenges to the credibility of the victim's testimony and the phone recording, in which he is heard admitting to the sexual assault, do not entitle him to relief. The jury heard the victim's testimony and was aware of inconsistencies with some of her trial testimony in contrast to her statements in the police report and her testimony. During trial, defense counsel cross-examined the victim, emphasized the inconsistencies in the victim's testimony and presented credibility arguments to the jury, including that the victim continued to communicate with defendant and sent him money after the sexual assault occurred. Defendant's disagreement with the victim's version of the events and denial that it was his voice on the recording does not mean the evidence was insufficient. To the contrary, this Court is required to make credibility choices in support of the jury's guilty verdict, and, as already discussed, the victim's testimony alone was sufficient to support defendant's conviction. See *Nowack*, 462 Mich at 400; *People v Lowrey*, 342 Mich App 99, 123; 993 NW2d 62 (2022) ("Differing versions of events merely establish that it is

---

[2] The hospital destroyed the kit pursuant to its policy at that time.

for the jury to determine witness credibility and resolve inconsistencies of testimony." (quotation marks and citation omitted).).

## III. SENTENCING

Defendant further contends that he is entitled to resentencing because the trial court imposed the maximum sentence recommended under the sentencing guidelines. More specifically, defendant argues that his 75-month minimum sentence was unreasonable, disproportionate, and was cruel or unusual under the Eighth Amendment to the United States Constitution as well as Article 1, § 16 of the state Constitution. We disagree.

Michigan's sentencing guidelines are now advisory, but trial courts must still consult them and take them into account during sentencing. *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). Recently, our Supreme Court ruled that all sentences should be reviewed for proportionality; however, it further held that sentences within the properly calculated sentencing guidelines minimum range are rebuttably presumed to be proportionate. *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 33-34 (opinion by BOLDEN, J.).

Regarding defendant's constitutional argument, the Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." US Const, Am VIII. Similarly, the Michigan Constitution provides, "Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained." Const 1963, art 1, § 16. However, "[t]he Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII." *People v Burkett*, 337 Mich App 631, 636; 976 NW2d 864 (2021) (quotation marks and citation omitted). "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id*. (quotation marks and citation omitted).

> This Court employs the following three-part test in determining whether a punishment is cruel or unusual: (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states. [*Id*. at 636-637 (quotation marks and citation omitted).]

"A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. (quotation marks and citation omitted).

Defendant's recommended minimum sentencing guidelines range for his CSC-III conviction was 45 to 75 months. The probation department recommended a 60-month minimum sentence. The victim made a statement, requesting a seven-year sentence. The prosecution requested a sentence at the top of the guidelines while defense counsel requested a 32-month

minimum sentence. The court recognized the guidelines' recommended range. It also reviewed defendant's history, noting that defendant was on "probation with HYTA [the Holmes Youthful Trainee Act, MCL 762.16 *et seq.*]" and that "[t]hat case could have been dismissed, but [defendant] never completed the program." The trial court further remarked that defendant committed the instant offense while on bond for another case, had had three probation violations, and did not "show an interest in taking care of [his] family."[3] The court then imposed the 75-month minimum sentence.

Defendant has failed to present any unusual circumstances that would render his presumptively proportionate sentence disproportionate or cruel or unusual punishment. Defendant contends, without citation to authority, that his inability to financially provide for his children while in prison renders his sentence cruel or unusual. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). In any event, we are not persuaded that defendant's age and inability to financially support his children while incarcerated are unusual circumstances that would render his sentence disproportionate or that his minimum 75-month sentence for CSC-III constitutes cruel or unusual punishment.

Affirmed.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

---

[3] The presentence investigation report reflects that defendant, who was unmarried, had three young children. He provided no information regarding the children's mothers and did not know any of the children's birthdates, only their ages.