*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDDIE WAYNE WILLIS,

        Defendant-Appellant.

UNPUBLISHED
October 19, 2023

No. 365752
Hillsdale Circuit Court
LC No. 2022-465307-FH

Before: K. F. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals by leave granted[1] the trial court order denying defendant's motion to quash his bindover on three counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), on a theory of force or coercion. On appeal, defendant contends that the district court abused its discretion when it bound over defendant for trial because no evidence adduced at the preliminary examination supported the court's probable-cause determination that the sexual penetrations were accomplished by force or coercion. We affirm.

The charges in this case arise out of defendant's alleged sexual conduct with the complainant, an Amish girl who was 16 and 17 years old at the time of the alleged conduct. At the preliminary hearing, the complainant testified that she was defendant's neighbor, but she did not know him personally until he hired her to perform odd jobs around his house when she was 15 years old. Defendant employed the complainant's siblings on occasion, but the complainant primarily worked for defendant alone.

Defendant would watch the complainant work or join the complainant in her tasks. During work, defendant invited the complainant to join him for coffee breaks inside a motorhome that he kept inside his barn. During these coffee breaks, he made the complainant sit next to him. Defendant made the complainant uncomfortable during these breaks because he would excessively

---

[1] *People v Willis*, unpublished order of the Court of Appeals, entered June 13, 2023 (Docket No. 365752).

praise her for performing simple tasks. The complainant became fearful after defendant told her during one of these breaks that he fantasized about her baking cookies with her hair down. She wore her hair up under a bonnet. In Amish culture, it was not appropriate for young women to wear their hair down in public.

During these coffee breaks, defendant started to kiss, touch, and fondle the complainant. His behavior escalated. He took off his underwear and pants and "put himself on her." Defendant touched her legs and breasts, and looked at her vagina. Defendant placed his finger inside the complainant's vagina, performed cunnilingus on her, and asked the complainant to perform oral sex on him. Shortly after the complainant turned 16 years old, defendant penetrated her with his penis for the first time. The complainant testified that he inserted his penis in her on more than one occasion.

The complainant testified that she did not want to engage in any sexual conduct with defendant. She continued to work for defendant because defendant made her "feel like he needs help; he can't do anything without me there to help him." She explained that defendant told her to deny that he did anything to her if anyone asked. She was afraid during these encounters and did not disclose defendant's conduct to anyone because she was "afraid nobody would believe me, and he would get mad and do something." She further explained that during some of these sexual encounters, a gun was present on a spare bed in the room. However, she stated that defendant never pointed the gun at her, talked about the gun, or directed her attention to the gun. Nevertheless, the gun made her afraid.

The complainant also testified that she was uneducated about sex because young women in her community were not taught about it. When asked what she thought would happen if she did not submit to defendant's sexual advances, the complainant testified that "[h]e probably would have made me do it anyway" "because he wanted to have his pleasure." She testified that defendant made her think that "[n]ot exactly in his words, but in his actions." She further explained that she was "supposed to do what he told me to. He made me feel like I was obligated to do it for him."

The district court bound over defendant as stated, and the circuit court denied defendant's motion to quash the information. Defendant now appeals. He contends that the district court abused its discretion when it bound him over for trial on the CSC-III charges because no evidence adduced at the preliminary examination provided support for the force or coercion element of CSC-III in MCL 750.520d(1)(b).

"In reviewing a district court's decision to bind over a defendant, the lower court's determination regarding the sufficiency of the evidence is reviewed for an abuse of discretion, but the lower court's rulings based on questions of law are reviewed de novo." *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). When reviewing a bindover decision, the circuit court "must consider the entire record of the preliminary examination and may not substitute its judgment for that of the district court." *People v Henderson*, 282 Mich App 307, 312-313; 765 NW2d 619 (2009). We review de novo whether the district court's bindover decision was an abuse of discretion. *Id*.

The purpose of a preliminary examination is to determine whether a felony criminal offense has been committed, and, if so, whether there is probable cause to believe that the defendant committed it. *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010). If a magistrate determines at the conclusion of the preliminary examination that there is probable cause that the defendant committed the charged felony, the magistrate must bind over the defendant for arraignment in the circuit court. MCL 766.13; *People v Yost*, 468 Mich 122, 125; 659 NW2d 604 (2003). The probable-cause standard is less rigorous than the guilt-beyond-a-reasonable-doubt standard, requiring "a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Yost*, 468 Mich at 126 (quotation marks and citation omitted).

"To establish that a crime has been committed, a prosecutor need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *Henderson*, 282 Mich App at 312. To that end, "[c]ircumstantial evidence and reasonable inferences from the evidence can be sufficient." *Id.* In determining whether the crime has been established, the magistrate is not limited to determining whether evidence on each element has been presented; rather, the magistrate must make a determination after an examination of the whole matter. *People v Stafford*, 434 Mich 125, 133; 450 NW2d 559 (1990).

Defendant was charged with three counts of CSC-III under a force or coercion theory:

(1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:

\* \* \*

(b) Force or coercion is used to accomplish the sexual penetration. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(*i*) to (*v*). [MCL 750.520d(1)(b).]

The required elements of MCL 750.520d under a force or coercion theory are that the defendant (1) "engage[d] in sexual penetration with another person" and (2) the defendant used "[f]orce or coercion . . . to accomplish the sexual penetration." MCL 750.520d(1)(b). Defendant contends that probable cause regarding the second element only was not met.

MCL 750.520b(1)(f) provides that "[f]orce or coercion includes, but is not limited to, any of the following circumstances:"

(*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

(*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the

-3-

actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

(*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim. [MCL 750.520b(1)(f)(*i*) to (*v*).]

MCL 750.520b(1)(f) unambiguously provides that the enumerated circumstances are not exhaustive. *People v Eisen*, 296 Mich App 326, 334; 820 NW2d 229 (2012). The inclusion of the phrase "but is not limited to" in both MCL 750.520b(1)(f) and MCL 750.520d(1)(b) shows that our Legislature did not limit the definitions of the terms "force" and "coercion" to the listed circumstances. *People v Premo*, 213 Mich App 406, 410; 540 NW2d 715 (1995).

Absent such a limitation, the "existence of force or coercion is to be determined in light of all the circumstances, and includes, but is not limited to, acts of physical force or violence, threats of force, threats of retaliation, inappropriate medical treatment, or concealment or surprise to overcome the victim." *People v Crippen*, 242 Mich App 278, 282-283; 617 NW2d 760 (2000) (emphasis omitted). In discussion of "force," our Supreme Court has explained:

To be sure, the "force" contemplated in MCL 750.520d(1)(b) does not mean "force" as a matter of mere physics, i.e., the physical interaction that would be inherent in an act of sexual penetration, nor, as we have observed, does it follow that the force must be so great as to overcome the complainant. It must be force to allow the accomplishment of sexual penetration when absent that force the penetration would not have occurred. In other words, the requisite "force" for a violation of MCL 750.520d(1)(b) does not encompass nonviolent physical interaction in a mechanical sense that is merely incidental to an act of sexual penetration. Rather, the prohibited "force" encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes. [*People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002).]

"Coercion," as discussed by this Court, " 'may be actual, direct, or positive, as where physical force is used to compel [an] act against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to other to do what his free will would refuse.' " *Premo*, 213 Mich App at 411, quoting *Black's Law Dictionary* (5th ed). "Force or coercion" exists whenever a defendant's conduct induces a victim to reasonably believe that the victim has no practical choice for a valid reason. *Eisen*, 296 Mich App at 335 (making this holding in a case involving a history of child sexual abuse). Additionally, coercion may be established when a person in a position of authority exploited the "special vulnerability" of a victim. *People v Reid*, 233 Mich App 457, 472; 592 NW2d 767 (1999). The defendant does not need to hold a formal position of power over the victim. *Id*.

-4-

Defendant argues that the presence of a gun and the complainant's subjective feelings alone were not evidence of force or coercion. This argument focuses on isolated factors in this case. It does not account for the context of this case viewed as a whole. Admittedly, the facts of this case do not meet the scenarios of force or coercion as listed in MCL 750.520b(1)(f)(*i*) through (*v*). However, force or coercion is not limited to this list. See *Premo*, 213 Mich App at 410. We conclude that the totality of the circumstances established probable cause to believe that defendant sexually penetrated the complainant using coercion.

The testimony presented at the preliminary hearing established that this case involved a young, Amish girl. Pennsylvania Dutch was her first language, and because of her membership in the Amish community, she was uneducated about sex. Defendant was the complainant's neighbor and hired her to work at his house. Defendant offered excessive praise of her for performing basic tasks, and told her that he fantasized about her baking cookies in his home with her hair down. These comments made the complainant uncomfortable because Amish girls are required to cover their hair and dress modestly in public. The complainant testified that she felt scared after defendant disclosed his fantasy.

The complainant mostly worked for defendant on her own. Defendant complained when she brought her siblings to work with her. Starting when she was 15 years old, defendant called the complainant into the motorhome located in his barn for coffee breaks, during which defendant started kissing, touching, and fondling her. This behavior escalated after she turned 16 years old. During a coffee break, defendant took off the complainant's underwear and pulled up her dress. He removed his own pants and underwear and laid on top of her. During this incident, he touched her legs and looked at her vagina. Over the next two years, defendant digitally penetrated the complainant, performed cunnilingus, and asked her to perform oral sex on him. On more than one occasion, defendant penetrated the complainant with his penis.

The complainant never wanted to engage in sexual contact with defendant, but she did because she "was afraid nobody would believe me, and he would get mad and do something." Defendant told her that she could not tell anyone about their conduct. The complainant was afraid during incidents in which defendant engaged in sexual conduct with her because a gun was visible on his spare bed in the room. However, the complainant testified that defendant never drew attention to the gun or brandished it in front of her. The complainant explained that, had she refused defendant, "[h]e probably would have made me do it anyway" "[b]ecause he wanted to have his pleasure." She concluded that defendant never verbally threatened her, but his actions made her think that he would do something to her if she did not comply. She understood by his actions that she was obligated to sexually engage with him.

We conclude that probable cause existed that defendant sexually penetrated the complainant by coercion. Considering the complainant's testimony, she was subject to a coercive environment. She was a young, naïve, Amish girl, who was employed and isolated by defendant in his barn. Defendant started grooming the complainant by praising, kissing, and touching her, and he escalated that behavior to sexual penetration. Defendant told the complainant that she could not tell others about his conduct and complained when she brought her siblings to work for him. Likewise, during some of the sexual encounters, she saw a gun present in the room. This testimony, in total, established probable cause that defendant sexually penetrated the complainant by establishing a coercive environment in which an isolated and vulnerable minor could not refuse

his advances. Therefore, the district court did not abuse its discretion when it bound over defendant on charges of CSC-III on a theory of force or coercion, and the trial court order denying defendant's motion to quash the bindover is affirmed.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron