*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

BRIAN KEITH MCEACHERN,

   Defendant-Appellant.

UNPUBLISHED
February 11, 2025
11:31 AM

Nos. 367152; 367153; 367154
Marquette Circuit Court
LC Nos. 2021-060296-FC;
    2021-060297-FC;
    2021-060302-FH

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of victim under 13 years of age by defendant 17 years of age or older); one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (sexual penetration accomplished by force or coercion); and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (sexual contact accomplished by force or coercion), each offense involving a different victim. The trial court sentenced defendant to serve 25 to 50 years' imprisonment for the CSC-I conviction, 6 to 15 years' imprisonment for the CSC-III conviction, and 49 days in jail for the CSC-IV conviction. We affirm.

## I. BACKGROUND

Defendant's CSC-I conviction involved victim CW. CW's family was close with defendant, and defendant was CW's stepfather's boss. When CW was nine years old, defendant took CW camping and during that time viewed CW naked twice to check for ticks. Twice before bed defendant offered again to check CW for ticks, but CW declined. At bedtime, defendant hugged CW and "stroked" his buttocks. The next day, they returned to defendant's house. At the house, defendant gave CW a glass of water and after drinking it CW felt "dizzy, shaky, [and] clammy." Defendant threw CW on his bed, took off their clothing, and anally penetrated CW with his penis. Afterward, defendant made CW promise not to tell anyone, telling CW that no one would believe him because defendant worked for the Michigan State Police.

Defendant's CSC-III conviction involved victim TG. TG grew up in the foster care system, and eventually became homeless. When staying at a shelter, he posted on social media that he was looking for food. Defendant reached out to TG, purchased food for him, and requested that he go to church. TG and defendant developed a relationship after their initial encounter. TG bonded with defendant. TG testified that he looked to defendant as a "father figure." Defendant purchased things for TG, paid his bills, and cosigned for a motorcycle. TG testified that there were numerous times defendant made him feel uncomfortable. TG explained that defendant would "brush my pants, or want to hold hands, or do things I made clear indication that I wasn't comfortable with." TG stated that he struggled to say no to defendant because he felt indebted to him, so he would let those things happen for a bit. But TG would eventually move away from defendant, remove his hand out of defendant's hand, or brush defendant off of him to make it clear that he was not comfortable with it. TG testified that defendant also made him uncomfortable when he would do something or buy something for TG and then make a comment about paying it back with a "favor", meaning a sexual favor.

In 2019, defendant visited TG at his apartment. Defendant leaned against TG, tried to hold his hand, and began cuddling TG. TG had made it clear to defendant on numerous prior occasions that he was uncomfortable with hand-holding and cuddling. After a few minutes, TG told defendant he wanted to get up because his back hurt. Defendant offered TG a massage. TG agreed, but eventually told defendant to stop as his hands got lower towards his buttocks and it made him uncomfortable. Defendant flipped TG onto his back, began kissing TG, and ultimately performed oral sex on TG. TG testified that it was not consensual and that he felt "cornered."

Defendant's CSC-IV conviction involved victim CN, who had fetal alcohol syndrome and physical and cognitive delays. CW introduced CN to defendant. CW had told CN that defendant was good with mental health. CN talked to defendant about his mental health and about faith. One day when CN was particularly anxious, he reached out to defendant because he needed someone to talk to and he asked defendant to come over. Defendant began giving CN a massage; he then groped CN's chest, abdomen, and "between [CN's] legs." When defendant made contact with CN's penis outside of his clothes, CN stood up. CN testified that he was in "shock" and asked defendant, "What happened?" Defendant responded, "Are you comfortable?" and CN said, "No, not really." Later, defendant asked for a hug, during which he groped CN's buttocks. Defendant messaged CN after he left, apologizing and saying, "Guess I got mixed signals." CN contacted the State Police about the incident the next day.

## II. PROSECUTOR'S REFERENCES TO "VICTIM"

Defendant first argues that he was unduly prejudiced because the prosecution used the term "victim" during voir dire 18 times to refer to the complainants, and that he was deprived of the effective assistance of trial counsel when counsel failed to object. We disagree.

"In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defense counsel did not object to any of the prosecutor's uses of the term "victim." Thus this issue is unpreserved. We review unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To obtain relief under plain-error

review, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the lower court proceedings. *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (cleaned up).

Defendant's ineffective-assistance-of-counsel claim is also unpreserved. An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). Generally, we review de novo constitutional questions, while we review the trial court's findings of fact for clear error. *Id*. To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther*[1] evidentiary hearing filed in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or in a motion to remand for a *Ginther* hearing filed in this Court, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did none of these things and thus our review of this unpreserved issue is limited to errors apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

Defendant argues that the prosecution's repeated use of the word "victim" to refer to the complainants was prejudicial. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 294 Mich App at 382. We decide prosecutorial misconduct issues on a case-by-case basis. *Id*. at 382-383. We "must examine the record and evaluate a prosecutor's remarks in context." *Id*. at 383. Defendant's argument is not supported by the record. The prosecution referred once to one complainant as the "child victim." The prosecution's other references to a "victim" during voir dire were for the purpose of inquiring whether any potential jurors knew anyone who was the "victim" of a sexual assault. Defense counsel also used the word "victim" during voir dire to ask a similar question. The prosecution's single reference to one of the complainants as a "victim" was appropriate because MCL 750.520a(s) provides that " '[v]ictim' means the person *alleging* to have been subjected to criminal sexual conduct." (Emphasis added.) Defendant has failed to demonstrate that an error occurred.

For the same reasons, defendant has failed to establish that he was deprived of the effective assistance of trial counsel. To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). We will not find trial counsel to be ineffective where an objection would have been meritless or futile, *id*., nor will we second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight[,]" *Abcumby-Blair*, 335 Mich App at 237 (cleaned up). The record demonstrates that, contrary to defendant's assertion, the prosecution did not make repeated references to the complainants in this case as victims, and the prosecution properly and accurately referred to one of the complainants as

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

a "victim," in accordance with MCL 750.520a(s). Counsel was not required to make a futile objection. See *Head*, 323 Mich App at 539.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that insufficient evidence was presented to support his convictions of CSC-III and CSC-IV. We disagree.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

There is sufficient evidence for a guilty verdict when "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Mikulen*, 324 Mich App at 20. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Further, "[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." MCL 750.520h.

## A. CSC-III

Defendant argues that the evidence was insufficient to support his CSC-III conviction because TG consented to the activity, there was no evidence of force or coercion, and TG was not a credible witness. We disagree.

A defendant is guilty of CSC-III if he or she engaged in sexual penetration with another person and force or coercion was used to accomplish the penetration. MCL 750.520d(1)(b). " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). "Force or coercion includes *but is not limited to* any of the circumstances listed in section 520b(1)(f)(i) to (v)." MCL 750.520d(1)(b) (emphasis added). MCL 750.520b(1)(f)(i) to (v) provides:

(*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

(*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

(*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

However, "the list of circumstances in which force or coercion may be proved is not exhaustive." *People v Green*, 313 Mich App 526, 539; 884 NW2d 838 (2015). "Force" as prohibited by MCL 750.520d(1)(b) "encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002). "Force or coercion is not limited to physical violence but is instead determined in light of all the circumstances." *People v Brown*, 197 Mich App 448, 450; 495 NW2d 812 (1992). This Court has observed that coercion "may be actual, direct, or positive, as where physical force is used to compel act[s] against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to [the] other to do what his free will would refuse." *Green*, 313 Mich App at 539 (cleaned up). "Further, 'force or coercion' exists whenever a defendant's conduct induces a victim to reasonably believe that the victim has no practical choice because of a history of child sexual abuse or for some other similarly valid reason." *Id.* (cleaned up). "A victim need not resist the actor in prosecution under sections 520b to 520g." MCL 750.520i.

Defendant argues that TG consented to the sexual penetration, that force or coercion was not used, and that TG was not a credible witness. Although there were some discrepancies in TG's testimony, a reasonable juror could determine that force or coercion was used. See *People v Carlson*, 466 Mich 130, 135; 644 NW2d 704 (2002) ("when a victim refuses to engage in sexual activities and the defendant ignores the refusal and penetrates the victim anyway, sufficient evidence exists to satisfy the force or coercion requirement") (cleaned up). TG testified that he did not want cuddle defendant and had made it clear to defendant numerous times that he did not like to do so. TG testified that he told defendant to stop while he was massaging him, that the oral sex was nonconsensual, and that he felt "cornered." TG's credibility was a question for the jury. See *People v Solloway*, 316 Mich App 174, 182; 891 NW2d 255 (2016) ("[W]itness credibility is a question for the fact-finder, and this Court does not interfere with the fact-finder's role."). Moreover, we must resolve any conflicts in the evidence in favor of the prosecutor. *Mikulen*, 324

Mich App at 20. A reasonable jury could find from the evidence presented that all the essential elements of MCL 750.520d(1)(b) were proven beyond a reasonable doubt. We will not disturb that determination.

## B. CSC-IV

Defendant similarly argues that the evidence was insufficient to support his conviction of CSC-IV because CN consented to the activity, there was no evidence of force or coercion, and CN was not a credible witness. We disagree.

A person is guilty of CSC-IV if the person engages in sexual contact with another person and force or coercion is used to accomplish the sexual contact. MCL 750.520e(1)(b). " 'Sexual contact' includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose." MCL 750.520a(q).

Defendant argues that there was no evidence that his touching of CN's penis was a "sexual touching." Defendant had been sharing sexually suggestive texts with CN, and defendant does not suggest that the touching was unintentional. Defendant also groped CN's buttocks after CN had told him that touching his penis made him uncomfortable, and after leaving, defendant texted CN, "Guess I got mixed signals." A jury may rely on circumstantial evidence and reasonable inferences as proof of the elements of a crime. *Blevins*, 314 Mich App at 357. The jury could reasonably infer that defendant's groping of CN's penis and buttocks was done for a sexual purpose.

Defendant further argues that there was no force or coercion. CN had indicated to defendant that he was uncomfortable when defendant groped his penis. Defendant then proceeded to use a common occurrence for them, hugging, as an opportunity to grab CN's buttocks. A reasonable jury could determine that defendant used surprise to overcome CN to engage in sexual contact, which is sufficient to establish force or coercion. See *People v Phelps*, 288 Mich App 123, 133; 791 NW2d 732 (2010), abrogated in part on other grounds by *People v Hardy*, 494 Mich 430; 835 NW2d 340 (2013) (concluding that evidence that the defendant "used the element of surprise to overcome the complainant" was sufficient to establish force or coercion to convict defendant of CSC I). And although defendant argues that CN's testimony was not credible, this was a determination for the jury to make. *Solloway*, 316 Mich App at 183.

## IV. MANDATORY MINIMUM SENTENCE

Next, defendant argues that although his minimum sentence of 25 years for CSC-I was mandatory, it was nevertheless an abuse of discretion because the sentence is disproportionate to the offense and the offender. We disagree.

"Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Id.*, citing *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "[W]ithin-guidelines sentences are to be reviewed for reasonableness[.]" *People v Posey*, 512

Mich 317, 359; 1 NW3d 101 (2023) (Opinion by BOLDEN, J.). "[T]he key to reasonableness review is whether the sentence is proportionate." *Id.* Thus, "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A proportionate sentence considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Boykin*, 510 Mich at 183. But "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id.* at 183-184.

"When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Posey*, 512 Mich at 360. To overcome that presumption, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id.* at 359. A defendant may overcome the presumptive proportionality of a within-guidelines sentence by "present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (cleaned up); see also *Milbourn*, 435 Mich at 636 ("Conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances."). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (cleaned up).

In this case, it is undisputed that defendant's CSC-I conviction carries a mandatory minimum of 25 years' incarceration. Therefore, defendant's sentence is presumptively proportionate. *Posey*, 512 Mich at 360. Defendant argues that the mandatory minimum sentence was disproportionate because he will be in his seventies when he is eligible for release. Defendant fails to explain how this would be an unusual circumstance that would render his sentence disproportionate. Defendant also argues that the sentence is disproportionate because it does not consider mitigating factors such as "his strong ties to the community and the plethora of people he has helped and counselled over the course of his life and career." But the trial court addressed defendant's counseling and community activity during sentencing, noting that he used these roles to seek out vulnerable people. Defendant bears the burden of demonstrating that his within-guidelines sentence is unreasonable or disproportionate. *Id.* at 357. Defendant has failed to meet his burden and thus is not entitled to resentencing.

Affirmed.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel