*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRANDON DETORRIS WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
June 13, 2025
11:25 AM

No. 366997
Wayne Circuit Court
LC No. 21-006809-01-FH

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion used to accomplish sexual penetration), one count of assault with intent to do great bodily harm (AWIGBH), MCL 750.84, and one count of domestic violence, MCL 750.81(2).[1] Defendant was sentenced to $5^1/_2$ to 15 years' imprisonment for each of the CSC-III convictions, 3 to 10 years' imprisonment for the AWIGBH conviction, and four days in jail for the domestic violence conviction. We affirm.

## I. BACKGROUND

This case arises from defendant's physical and sexual assault of complainant in defendant's home. Complainant and defendant were in a dating relationship between June 2017 and March 2021. In February 2021, defendant invited complainant for dinner at his residence to discuss their relationship. When complainant arrived, she noticed items in his home that caused her to suspect that defendant had been with another woman. Complainant confronted defendant in the kitchen and gathered her things to leave. However, defendant took her keys, phone, and coat, and told her that he would kill her if she left. Defendant called her "crazy" and "stupid" and put his finger in

_____

[1] Defendant also was charged with one count of stalking, MCL 750.411h, but he was found not guilty by the jury.

her face. Complainant slapped defendant's finger, and then he choked her to the point that her eyes rolled back and she urinated on herself.

When defendant stopped choking her, she pushed and kicked him, and he responded in kind. When complainant heard her phone begin to ring, she went to his bedroom to look for it. Defendant followed complainant and accused her of going through his things. Then defendant put his arms around her ribs and started to squeeze. Complainant screamed at defendant to release her, but defendant slammed complainant to the floor and grabbed her breast. Complainant was concerned because she recently had breast surgery. Eventually, she got up, but defendant slammed her into the wall, and she fell to the ground, hitting her head on the floor. She got up again and headed to the door, telling him that she wanted to leave and that she would call the police. However, defendant grabbed her from behind and pulled her back inside the house. The two physically struggled each time that complainant attempted to leave, and defendant forcibly penetrated complainant twice vaginally throughout these struggles, despite her protests. After the second penetration, defendant told her that he was sorry, that he loved her, and that she should get cleaned up. She showered and then went home.

When complainant got home, she noticed that her jeans, turtle neck, and coat were ripped. She suffered bruises to her face, breast, leg, arms, hands, and neck, which she photographed. When complainant attended work the following day, she "was in a lot of pain," but she concealed her injuries to her face using makeup and a mask. After work, she visited a hospital for medical treatment, where defendant was waiting for her in the parking lot. Complainant informed him that he should leave, but defendant insisted on waiting. When complainant checked into the hospital, complainant attributed her injuries to a work incident because defendant was outside, and she "didn't want him to get in trouble." Defendant eventually walked into the hospital and sat beside complainant. She felt that she would be unable to speak freely to the medical personnel with defendant there, so she left before being seen by a physician.

A few days later, complainant sought treatment from her primary care physician, claiming that she was injured at work. Between February and April 2021, complainant received multiple messages each day from defendant, despite repeatedly telling him to stop contacting her. Defendant also stopped by complainant's home, uninvited, late at night and would ring the doorbell or bang on the door. Complainant attended couple's counseling with defendant at his request after the assault, although she did not wish to continue their relationship. She also visited defendant's home between three and five times after the assault, but before she disclosed the matter to law enforcement. In one visit, complainant and defendant had sex, but she testified that she did not want to and was afraid of what would happen if she did not agree to the sex. Complainant testified that she believed if she refused to see defendant, "He would show up to my house, and cause trouble, for my parents, and my children." Complainant eventually ended the relationship in March 2021 out of concern for the safety of her children.

In April 2021, complainant received a call from defendant's girlfriend, and the two spoke on the phone for approximately nine hours about defendant. After defendant discovered the phone call, he sent sexually explicit photographs and videos of complainant to her brothers and ex-husband. Complainant's brothers questioned her about the day that she visited the hospital, and she revealed that defendant had caused her injuries. Complainant then told her primary care physician about the assault and further reported the incident to the Westland Police Department.

The interviewing police officer took photographs of the torn clothing that complainant was wearing during the assault. Following a three-day jury trial, defendant was convicted of two counts of CSC-III, one count of AWIGBH, and one count of domestic violence, and was sentenced as previously specified. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to support his convictions for CSC-III and AWIGBH. On this same basis, defendant argues that the trial court erred by failing to grant his motion for judgment notwithstanding the verdict. We disagree.

"In challenges to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). This standard of review is "deferential," and the reviewing court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quotation marks and citation omitted). Further, the prosecutor does not have to negate every reasonable theory consistent with innocence—the prosecutor is bound only "to prove the elements of the offense beyond a reasonable doubt" and convince the jury "in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000 (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Oros*, 502 Mich at 239 (quotation marks, citation and emphasis omitted).

## A. CSC-III

Defendant was convicted of CSC-III under MCL 750.520d(1)(b), which provides that an individual is guilty of the offense if the subject individual engages in sexual penetration with another person and force or coercion was used to accomplish the penetration. " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

"Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(*i*) to (*v*)." MCL 750.520d(1)(b). MCL 750.520b(1)(f) provides in pertinent part:

> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

> (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion. [MCL 750.520b(1)(f)(*i*) to (*iii*).]

"Force" as proscribed by MCL 750.520d(1)(b) "encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002). "Force or coercion is not limited to physical violence but is instead determined in light of all the circumstances." *People v Brown*, 197 Mich App 448, 450; 495 NW2d 812 (1992). This Court has established that "when a victim refuses to engage in sexual activities and the defendant ignores the refusal and penetrates the victim anyway, sufficient evidence exists to satisfy the force or coercion requirement." *Carlson*, 466 Mich at 135 (quotation marks and citation omitted).

In the present case, complainant testified that defendant forcibly penetrated complainant twice vaginally during her attempts to leave his house. She asserted that during the first penetration, defendant unbuttoned her pants and pulled them down, but she dragged her pants back up stating: "I don't want to do this. I want to go home. I'm covered in urine." Defendant ignored complainant and removed her pants, leaving her in her underwear. Defendant proceeded to remove his own pants, and he penetrated complainant vaginally with his penis. He initially dismissed her pleas to stop until he asked, "[D]o you want me to stop?" and she responded affirmatively. At that point, defendant halted his conduct, grabbed complainant's arm, and asserted, "[C]ome on, let's go get cleaned up."

Complainant further testified that when the parties entered the bathroom, she saw the bruises on her face and asked, "[H]ow am I going to go home looking like this, to my parents, and to my daughters?" Defendant responded: "I'm sorry. I love you. You can't leave me." He turned her, presumably to face him, placed her on the bathroom vanity, and again put his penis in her vagina. Although complainant said, "I do not want this" and "I just want to go home," defendant continued to penetrate her vaginally until he ejaculated.

Considering complainant's testimony that defendant penetrated after physically assaulting her and despite her stated refusal, a reasonable juror could determine that force or coercion was used during both instances of sexual abuse. See *Brown*, 197 Mich App at 450. Additionally, although complainant confirmed at trial that she and defendant had sex again on a later occasion after the assaults in this case, she testified that defendant was "very persistent" and "very manipulative" regarding sexual intercourse, that she was afraid of what would happen if she did not acquiesce to sex, and that he threatened to kill her if she ended their relationship. Viewing the evidence in a light most favorable to the prosecution, the jury could reasonably conclude that complainant's testimony supported that—after the assault in this case—complainant felt that she was forced to comply in the subsequent sexual encounter, too. See *People v Eisen*, 296 Mich App 326, 334-335; 820 NW2d 229 (2012) (determining that "force or coercion" exists when a defendant's conduct induces a victim to reasonably believe that the victim has no practical choice because of a history of using force).

Complainant also explained that her delayed disclosure of the assault was related to defendant's presence at the hospital during complainant's initial attempt to seek treatment, complainant's consideration of the impact of defendant's potential prosecution on his children, and complainant's fear regarding defendant's continued threats against her and her children. We have recognized that such delayed reporting is a common phenomenon in intimate-partner violence matters. See, e.g., *People v Skippergosh*, ___ Mich App ___, ___; ___NW2d ___ (2024) (Docket No. 364127) slip op at 19 (identifying delayed reporting and attempts to hide abuse as possible reactions of a complainant in intimate-partner violence).

However, to the extent that defendant argues on appeal that complainant's version of events was not credible, we "must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Moreover, although a complainant's testimony in a CSC case "need not be corroborated," MCL 750.520h, there were photographs documenting complainant's injuries and damaged clothing. Additionally, complainant's primary care doctor testified to her injuries, noting that she had swelling on her neck and a soft tissue injury of the victim's chest wall after the assault.

Because a reasonable jury could find from the evidence presented that all the essential elements of MCL 750.520d(1)(b) were proven beyond a reasonable doubt for the two instances of sexual abuse, defendant is not entitled to relief.

## B. AWIGBH

Defendant was further convicted of AWIGBH pursuant to MCL 750.84, which states, in relevant part:

> (1) A person who does either of the following is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both:

> > (a) Assaults another person with intent to do great bodily harm, less than the crime of murder.

> > (b) Assaults another person by strangulation or suffocation.

> (2) As used in this section, "strangulation or suffocation" means intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person.

The elements of AWIGBH are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). "The intent to do great bodily harm less than murder is an intent to do serious injury of an aggravated nature." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). The elements of AWIGBH by strangulation are: (1) an assault, and (2) the intentional "impeding [of] normal breathing or circulation of the blood by applying pressure

-5-

on the throat or neck . . . ." MCL 750.84(1)(b) and (2). "Although actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent." *Stevens*, 306 Mich App at 629 (citations omitted).

There was sufficient evidence to convict defendant under either the general AWIGBH, MCL 750.84(1)(a), or assault by strangulation, MCL 750.84(1)(b), theories. As previously noted, complainant testified that defendant placed one hand on complainant's throat and choked her until her eyes rolled back and she urinated on herself. Complainant further testified that he squeezed her around her ribs and slammed her to the floor, with defendant on top of complainant. Defendant also grabbed her left breast "like, he was trying to rip off my body."

Complainant also asserted that after she was able to get up and attempt to leave, defendant grabbed her and slammed her into the wall, resulting in her striking her head and sliding to the floor due to the impact. Complainant was able to stand up again, and she walked to the door of defendant's residence to leave the premises, informing him that she was going to call the police. As complainant opened the door, defendant grabbed complainant by her coat collar and pulled her back into his home. When complainant attempted to leave a third time, defendant slammed complainant into the door, and she landed on the foyer floor with one shoe off. Complainant additionally testified: "My, uhm, jeans, were ripped, uh, the zipper part, and the belt loops, or the belt, for jeans. And my turtle neck, the side was ripped," in addition to her coat. Complainant suffered bruises to her face, breast, leg, arms, hands, and neck, which she photographed on the day of the assault. Moreover, there was additional evidence that complainant suffered injuries as a result of the assault, including law enforcement's photos of her torn clothing, as well as testimony from complainant's primary care physician.

Viewing this evidence in the light most favorable to the prosecution, there was sufficient evidence to establish that defendant acted with an intent to inflict great bodily harm because defendant struck complainant multiple times during an argument, injuring her. See *Stevens*, 306 Mich App at 629. Alternatively, there was adequate evidence presented to support the jury's determination that defendant was guilty of AWIGBH by strangulation because complainant testified that defendant choked complainant to the point that she was unable to breathe, her eyes rolled back, and she urinated on herself. See MCL 750.84(1)(b) and (2). Although defendant contends that complainant's testimony was not credible, as we have discussed, "[t]he credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). Accordingly, defendant is not entitled to relief on this basis, either.

Therefore, and deferring to the jury's reasoned credibility determinations, we conclude that sufficient evidence supported defendant's convictions. Because defendant's arguments that the trial court erred by denying his motion for judgment notwithstanding the verdict and that his conviction is against the great weight of the evidence, are premised on his allegation that the evidence was insufficient to support his convictions, we also conclude that the relief requested on those grounds also is not warranted.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was deprived of effective assistance of counsel during the lower court proceedings. We disagree.

This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial. *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id.* Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). However, if the trial court did not hold an evidentiary hearing on this issue, then there are no factual findings to which we must defer. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part, 493 Mich 864 (2012). In such cases, we will determine whether the defendant received ineffective assistance on the record alone. *Id.* We review de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *Id.* at 19-20.

The United States Constitution and Michigan Constitution guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. For a defendant to succeed on an ineffective-assistance-of-counsel claim, the defendant must show "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). This Court will not substitute its own judgment for that of counsel or use the benefit of hindsight in assessing the defense counsel's competence. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "The [e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022) (quotation marks and citation omitted). Because "defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (quotation marks and citation omitted).

Defendant first contends that his trial counsel omitted exculpatory evidence in the form of text messages and photographs "of a sexual nature" exchanged between the parties, ostensibly after the assault occurred. However, defendant has failed to provide the evidence to this Court on appeal, or otherwise indicate the material of the subject text messages and photographs. Furthermore, complainant testified as to her continued relationship with defendant after the assault, suggesting the substance of the proposed evidence may be duplicative. Finally, at the hearing on defendant's motion for a new trial, the trial court indicated that the text messages were not exculpatory:

> I would note that my review of the text messages has some things that are also unfavorable to [defendant]. There is a message where she indicates about [. . .]

the tearing of her turtle [neck]. There are some remarks that could lead a juror to believe—there were statements that would have corroborated the fact of her assault.

* * *

[Complainant] indicates, in one of the text messages it says, where is the money for my copays that I had to get X-rays on? Where is my turtle neck you tore in half? Things of that nature were located in these text messages. There is a message that indicates, look what you have done to me, slapped me in the face. How many the F-word times?

So there are messages—certainly, some of the messages would have corroborated the fact that they were in a continued relationship, but I believe that was essentially [complainant's] testimony at the trial anyway, that they were continuing to have a relationship even after she alleged that this particular incident had occurred. And so I do agree that the text messages themselves . . . don't directly identify that an assault occurred. But there are messages within the text messages that could clearly show that an assault, um that could go to support the complainant's testimony of an assault.

Thus, without further information regarding the nature of the contested text messages and photographs, we cannot conclude that defense counsel's performance fell below an objective standard of reasonableness because defendant failed to establish the factual predicate for his claim. See *Muhammad*, 326 Mich App at 63.

Defendant further advances that defense counsel was ineffective for neglecting to acquire defendant's girlfriend as a witness. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). Because defendant did not receive an evidentiary hearing, the record contains no information about his girlfriend's proposed testimony. Additionally, defendant has not provided this Court with an affidavit from defendant's girlfriend regarding her anticipated statements at trial. "Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018). Because defendant has failed to establish the factual predicate for his claim, he is unable to establish ineffective assistance of counsel. See *id*.

Defendant additionally argues that defense counsel neglected to question the relevance and authenticity of the photographs presented at trial, without specifying exactly which photographs are at issue. Presuming that defendant is alluding to the photographs of complainant's injuries and clothing presented at trial, defense counsel did object to the admission of the photographs captured by law enforcement of complainant's damaged clothing, but the trial court overruled the objection noting, "The Officer just testified, these pictures were taken after the complainant left." Regarding

the photographs recorded by complainant of her injuries, complainant testified that she took the photographs the day of the subject incident, and she further stated that the photographs were fair and accurate representations of how her injuries manifested due to the alleged assault. See MRE 901(b)(1)[2] (providing that when authentication or identification is a condition precedent to the admissibility of evidence, the requirement may be satisfied by testimony from a witness with knowledge that an item is what it is claimed to be). As defendant neglects to present an adequate basis to otherwise challenge the admission of the subject photographs, defendant has not established that his defense counsel's objection would have merit, and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant lastly argues that defense counsel failed to effectively cross-examine complainant, impeach complainant using her prior personal protection order (PPO) testimony, or probe complainant regarding her inconsistent injuries and delayed reporting of the subject incident. However, the record plainly refutes defendant's contentions. Defendant's trial counsel vigorously cross-examined complainant regarding her delayed disclosure of the assault, in addition to her continued relationship with defendant for months thereafter, and he inquired whether complainant recalled that she advanced inconsistent statements regarding the underlying events during the previous PPO hearing. Furthermore, during his closing argument, defendant's trial counsel questioned complainant's narrative of what transpired stating, "Now, if we look at common sense, that doesn't indicate, it doesn't jive, and doesn't go with what [complainant] says happened" noting, "[Complainant's] actions are in direct contradiction to what she is claiming took place" and asserting, "We have no witnesses. We have no text messages. We have no e-mails. Nothing except pictures of clothing that she brought in, six to seven weeks later, that appear to be torn, at the seams, that she claims she was wearin' [sic] that night." Defense counsel further highlighted perceived discrepancies in complainant's testimony regarding the timeline of pertinent events, and he suggested that complainant's purpose in reporting the matter was jealousy, anger, and apprehension regarding her family's response to her relationship with defendant. The jury impliedly resolved these credibility issues by rejecting defendant's arguments. "The fact that defense counsel was unable to persuade the jury of defendant's position does not establish ineffective assistance of counsel." *People v Haynes*, 338 Mich App 392, 434; 980 NW2d 66 (2021). Because the record does not support defendant's contentions, and defendant has failed to identify an error apparent on the record, he is unable to demonstrate that he was deprived of effective assistance of counsel. See *Gioglio (On Remand)*, 296 Mich App at 20.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. This opinion relies on the version of MRE 901 in effect at the time this matter was decided. The subsequent amendment to MRE 901 does not indicate any notable change from prior version.